GEORGE G. HAZARD & others *vs.* VIRGIL DRAPER & another.

If a mortgagor in his mortgage of real estate has covenanted to keep the buildings standing on the land insured against fire for the benefit of the mortgagee, and payable to him in case of loss, or in default thereof to pay to him such sums as he should reasonably expend for such insurance, and afterwards procures a policy in his own name, and, after a loss, delivers the policy to a third person in trust, to collect the insurance money and pay to the mortgagee so much as may be necessary to satisfy the debt secured by the mortgage, this gives the mortgagee an equitable lien upon the policy which may be enforced against the mortgagor, although he afterwards obtains possession of the policy for a temporary purpose, and then fraudulently seeks to avail himself thereof for his own benefit.

BILL IN EQUITY to enforce a lien upon certain policies of insurance, and to secure to the plaintiffs the money that might be received thereon.

At the hearing before the chief justice, it appeared that on the 19th of May 1856 the defendants, Draper & Hall, executed to Hervey M. Richards a mortgage of land in Attleborough, to secure the payment of $2000, with a proviso that the mortgagors "shall until such payment keep the buildings standing on the land aforesaid insured against fire in a sum not less than two thousand dollars, for the benefit of said mortgagee, and payable to him in case of loss, . . . . . . or in default thereof shall on demand pay to said mortgagee all such sums of money as the said mortgagee shall reasonably pay for such insurance, with interest;" that this mortgage and the debt secured thereby were afterwards assigned to the plaintiffs, and the chief value of the real estate consisted in the buildings standing on the land; that the mortgagors subsequently procured two policies of insurance upon the buildings, payable to themselves, for the amount of $3000; that on the 27th of May 1860 the buildings were destroyed by fire; that in the early part of June 1860 Mr. Hazard, one of the plaintiffs, and acting for them all, had an interview with the defendant Draper, and claimed that the latter was bound to transfer the policies to the plaintiffs, and, after some discussion, Draper proposed to put them into the hands of Simeon Bowen until the claims against the insurance companies should be adjusted, when Bowen should receive the money and apply the proceeds, so far as necessary, to pay the mortgage debt; that the policies were shortly afterwards accordingly placed in Bowen's hands, who accepted the trust; that in the following July Draper called upon Bowen and asked for the policies, in order to take them to the insurance offices and obtain if possible a proposition and prepare for a settlement; that Bowen declined to lend them, saying that they were left with him in trust, and he did not consider that he ought to let them go out of his hands; that Draper thereupon promised, " upon his honor as a man, and by all that was great and good," that he would return them to Bowen as soon as he got back, and

finally persuaded Bowen to lend them to him, under this agreement; and that Draper afterwards refused to return them, not denying his promise to do so, but saying that he thought that he and Hall were not obliged to pay the mortgage, and that he should not give up the policies. A receiver was subsequently appointed to receive the money from the insurance companies.

Upon these facts, and others which are not now material, the case was reserved for the determination of the whole court.

*E. Ames & S Bowen,* for the plaintiffs.

*J. B. Sandford,* for the defendant Draper.

CHAPMAN, J. All the other questions that have arisen in this case are superseded by the fact that, after the destruction of the property by fire, the plaintiffs claimed that they had, by virtue of the stipulation in the mortgage, a lien upon the policies, to secure the payment of their note; and that Draper and Hall yielded to their demand, and placed the policies in the hands of Mr. Bowen in trust to collect the amount due on them, and apply to the payment of the note so much of the proceeds as should be necessary for that purpose. This agreement and pledge of the policies gave the plaintiffs as perfect a lien upon the money as if the policies had been originally made payable to them.

The fact that Draper afterwards borrowed the policies of Bowen for a temporary purpose and refuses to return them, does not affect the rights of the parties. Bowen had no authority to lend them, but trusted to Draper's honor; and Draper well knew this. In refusing to return them he acted treacherously towards Bowen, and committed a fraud upon the plaintiffs. He can take no advantage of such conduct. Hall desired to have the money applied to the payment of the note according to the agreement.

The plaintiffs are entitled to a decree that the note and interest, and the taxable costs of suit, be paid out of the money in the hands of the receiver.